## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:                                                                       CASE NO.:

**ROY LEE MOORE, JR.**                            **16-02872-5-JNC**
**Debtor**                                                             **CHAPTER 13**

## MOTION FOR PROPOSED PRIVATE SALE

TO:    ALL CREDITORS, INDENTURE TRUSTEES AND COMMITTEES APPOINTED OR ELECTED IN THIS CASE ACCORDING TO LAW

In accordance with Rule 6004 of the Bankruptcy Rules, the Debtor herein moves the Court and notice is hereby given that the Debtor proposes to sell, at private sale, certain real estate as follows:

1. At the time of the filing of the petition, the Debtor owned certain real estate described as follows:

> Owner – Roy Lee Moore, Jr.
>
> PIN No: 8922599159
>
> Being Lot No. 26, as shown and delineated on that certain plat entitled in part, "Final Plat for Grand View–Phase I", said plat being prepared by Patrick J. Thompson, Registered Surveyor, under date of July 15, 1997, which plat is recorded in Map Book 23, at Pages 3 and 4, of the Pasquotank County Registry, and said plat is incorporated herein by reference.
>
> The property to be sold is described in the Deed recorded in Book 834, Page 585 of the Pasquotank County Register of Deeds.

2. The Debtor's Chapter 13 Plan was confirmed September 6, 2016.

3. The Debtor has received an offer from Michele Kelso to purchase the above described property for $225,000.00. Realtors are involved and as a result commissions will be paid. The Buyer is unrelated to the Debtor. A copy of the offer is attached as Exhibit A.

4. The Debtor valued his residence at $180,000.00 in his petition. Since the petition was filed, the Debtor employed a Realtor to assist him to sell the real estate (see DE 55). Based on market conditions, the Debtor believes that this is a fair price.

5. There are two liens on the residence, held by Select Portfolio Services, Inc., servicer for ABS REO Trust V, and Nationstar Mortgage, LLC d/b/a Mr. Cooper, servicer for U.S. Bank National Association. A separate motion is being filed to sell the property free and clear of liens.

6. The Debtor proposes that at closing from the sales price, any ad valorem taxes, plus all reasonable customary expenses of sale attributable to a seller, and appropriate Section 506 fees for the undersigned will be deducted. The balance of the proceeds shall be deposited with the undersigned to be held in trust pending further orders of this Court.

FURTHER NOTICE is hereby given that the Debtor is credibly informed that the offer received for said property is a fair and reasonable price for the property and that it would be to the benefit and best interest of the estate for the Debtor to accept the offer and sell the property at private sale. The Debtor submits to the Court that the purchaser is unrelated to the Debtor and that the sale is a bona fide sale.

DATE: March 23, 2020.

/S/ John G. Rhyne
John G. Rhyne
State Bar No: 17570
P.O. Box 8327
Wilson, NC 27893
Telephone: (252) 234-9933
Telecopier: (252) 991-5567
E-mail: johnrhyne@johnrhynelaw.com

**Exhibit A**



# OFFER TO PURCHASE AND CONTRACT
[Consult "Guidelines" (Form 2G) for guidance in completing this form]

For valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Buyer offers to purchase and Seller upon acceptance agrees to sell and convey the Property on the terms and conditions of this Offer To Purchase and Contract and any addendum or modification made in accordance with its terms (together the "Contract").

1. **TERMS AND DEFINITIONS**: The terms listed below shall have the respective meaning given them as set forth adjacent to each term.

   (a) "**Seller**": _____ Roy L Moore Jr, Veronica A Moore _____

   (b) "**Buyer**": _____ Michele Kelso _____

   (c) "**Property**": The Property shall include all that real estate described below together with all appurtenances thereto including the improvements located thereon and the fixtures and personal property listed in Paragraphs 2 and 3 below.

   > **NOTE**: If the Property will include a manufactured (mobile) home(s), Buyer and Seller should consider including the Manufactured (Mobile) Home provision in the Additional Provisions Addendum (Standard Form 2A11-T) with this offer.

   Street Address: _____ 103 Green Run Ct _____
   City: _____ Elizabeth City _____ Zip: 27909-5179
   County: _____ Pasquotank _____, North Carolina

   > **NOTE**: Governmental authority over taxes, zoning, school districts, utilities and mail delivery may differ from address shown.

   Legal Description: (Complete *ALL* applicable)
   Plat Reference: Lot/Unit __26__, Block/Section __Phase 1__, Subdivision/Condominium __Grandview__
   _____, as shown on Plat Book/Slide _____ at Page(s) _____
   The PIN/PID or other identification number of the Property is: **8922599159**
   Other description: MAP: P123-179, PIN 8922 599159, 103 Green Run CT Pasquotank County
   Some or all of the Property may be described in Deed Book __834__ at Page __584__

   (d) "**Purchase Price**":

   | $ | | |
   |---|---|---|
   | $ **225,000.00** | | paid in U.S. Dollars upon the following terms: |
   | $ _____ | | BY DUE DILIGENCE FEE made payable and delivered to Seller by the Effective Date. |
   | $ **1,000.00** | | BY INITIAL EARNEST MONEY DEPOSIT made payable and delivered to Escrow Agent named in Paragraph 1(f) by ☐ cash ☒ personal check ☐ official bank check ☐ wire transfer, ☐ electronic transfer, EITHER ☐ with this offer OR ☒ within five (5) days of the Effective Date of this Contract. |
   | $ _____ | | BY (ADDITIONAL) EARNEST MONEY DEPOSIT made payable and delivered to Escrow Agent named in Paragraph 1(f) by cash, official bank check, wire transfer or electronic transfer no later than 5 p.m. on _____, **TIME BEING OF THE ESSENCE**. |
   | $ _____ | | BY ASSUMPTION of the unpaid principal balance and all obligations of Seller on the existing loan(s) secured by a deed of trust on the Property in accordance with the attached Loan Assumption Addendum (Standard Form 2A6-T). |
   | $ _____ | | BY SELLER FINANCING in accordance with the attached Seller Financing Addendum (Standard Form 2A5-T). |
   | $ _____ | | BY BUILDING DEPOSIT in accordance with the attached New Construction Addendum (Standard Form 2A3-T). |
   | $ **224,000.00** | | BALANCE of the Purchase Price in cash at Settlement (some or all of which may be paid with the proceeds of a new loan). |

Should Buyer fail to deliver either the Due Diligence Fee or any Initial Earnest Money Deposit by their due dates, or should any check or other funds paid by Buyer be dishonored, for any reason, by the institution upon which the payment is drawn, Buyer shall have one (1) banking day after written notice to deliver cash, official bank check, wire transfer or electronic transfer to the payee. In the event Buyer does not timely deliver the required funds, Seller shall have the right to terminate this Contract upon written notice to Buyer.

Page 1 of 14

This form jointly approved by:
North Carolina Bar Association
North Carolina Association of REALTORS®, Inc.

STANDARD FORM 2-T
Revised 7/2019
© 7/2019

Buyer's initials _____  Seller's initials  _____



(e) "**Earnest Money Deposit**": The Initial Earnest Money Deposit, the Additional Earnest Money Deposit and any other earnest monies paid or required to be paid in connection with this transaction, collectively the "Earnest Money Deposit", shall be deposited and held in escrow by Escrow Agent until Closing, at which time it will be credited to Buyer, or until this Contract is otherwise terminated. In the event: (1) this offer is not accepted; or (2) a condition of any resulting contract is not satisfied, then the Earnest Money Deposit shall be refunded to Buyer. In the event of breach of this Contract by Seller, the Earnest Money Deposit shall be refunded to Buyer upon Buyer's request, but such return shall not affect any other remedies available to Buyer for such breach. In the event of breach of this Contract by Buyer, the Earnest Money Deposit shall be paid to Seller. The payment of the Earnest Money Deposit to Seller and the retention of any Due Diligence Fee by Seller (without regard to their respective amounts, including zero) together shall serve as liquidated damages ("Liquidated Damages") and as Seller's sole and exclusive remedy for such breach, but without limiting Seller's rights under Paragraphs 4(d) and 4(e) for damage to the Property. It is acknowledged by the parties that the amount of the Liquidated Damages is compensatory and not punitive, such amount being a reasonable estimation of the actual loss that Seller would incur as a result of a breach of this Contract by Buyer. The payment to Seller and/or retention by Seller of the Liquidated Damages shall not constitute a penalty or forfeiture but actual compensation for Seller's anticipated loss, both parties acknowledging the difficulty determining Seller's actual damages for such breach. If legal proceedings are brought by Buyer or Seller against the other to recover the Earnest Money Deposit, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorney fees and court costs incurred in connection with the proceeding.

(f) "**Escrow Agent**" (insert name): _____Trimpi and Nash LLP_____

> **NOTE**: In the event of a dispute between Seller and Buyer over the disposition of the Earnest Money Deposit held in escrow, a licensed real estate broker ("Broker") is required by state law (and Escrow Agent, if not a Broker, hereby agrees) to retain the Earnest Money Deposit in the Escrow Agent's trust or escrow account until Escrow Agent has obtained a written release from the parties consenting to its disposition or until disbursement is ordered by a court of competent jurisdiction. Alternatively, if a Broker or an attorney licensed to practice law in North Carolina ("Attorney") is holding the Earnest Money Deposit, the Broker or Attorney may deposit the disputed monies with the appropriate clerk of court in accordance with the provisions of N.C.G.S. §93A-12.

THE PARTIES AGREE THAT A REAL ESTATE BROKERAGE FIRM ACTING AS ESCROW AGENT MAY PLACE THE EARNEST MONEY DEPOSIT IN AN INTEREST BEARING TRUST ACCOUNT AND THAT ANY INTEREST EARNED THEREON SHALL BE DISBURSED TO THE ESCROW AGENT MONTHLY IN CONSIDERATION OF THE EXPENSES INCURRED BY MAINTAINING SUCH ACCOUNT AND RECORDS ASSOCIATED THEREWITH.

(g) "**Effective Date**": The date that: (1) the last one of Buyer and Seller has signed or initialed this offer or the final counteroffer, if any, and (2) such signing or initialing is communicated to the party making the offer or counteroffer, as the case may be. The parties acknowledge and agree that the initials lines at the bottom of each page of this Contract are merely evidence of their having reviewed the terms of each page, and that the complete execution of such initials lines shall not be a condition of the effectiveness of this Agreement.

(h) "**Due Diligence**": Buyer's opportunity to investigate the Property and the transaction contemplated by this Contract, including but not necessarily limited to the matters described in Paragraph 4 below, to decide whether Buyer, in Buyer's sole discretion, will proceed with or terminate the transaction.

(i) "**Due Diligence Fee**": A negotiated amount, if any, paid by Buyer to Seller with this Contract for Buyer's right to terminate the Contract for any reason or no reason during the Due Diligence Period. It shall be the property of Seller upon the Effective Date and shall be a credit to Buyer at Closing. The Due Diligence Fee shall be non-refundable except in the event of a material breach of this Contract by Seller, or if this Contract is terminated under Paragraph 8(n) or as otherwise provided in any addendum hereto. Buyer and Seller each expressly waive any right that they may have to deny the right to conduct Due Diligence or to assert any defense as to the enforceability of this Contract based on the absence or alleged insufficiency of any Due Diligence Fee, it being the intent of the parties to create a legally binding contract for the purchase and sale of the Property without regard to the existence or amount of any Due Diligence Fee.

(j) "**Due Diligence Period**": The period beginning on the Effective Date and extending through 5:00 p.m. on _____April 17, 2020_____ **TIME BEING OF THE ESSENCE.**

(k) "**Settlement**": The proper execution and delivery to the closing attorney of all documents necessary to complete the transaction contemplated by this Contract, including the deed, settlement statement, deed of trust and other loan or conveyance documents, and the closing attorney's receipt of all funds necessary to complete such transaction.

(l) "**Settlement Date**": The parties agree that Settlement will take place on _____ **May 8, 2020** (the "Settlement Date"), unless otherwise agreed in writing, at a time and place designated by Buyer.

(m) "**Closing**": The completion of the legal process which results in the transfer of title to the Property from Seller to Buyer, which includes the following steps: (1) the Settlement (defined above); (2) the completion of a satisfactory title update to the Property following the Settlement; (3) the closing attorney's receipt of authorization to disburse all necessary funds; and (4) recordation in the appropriate county registry of the deed(s) and deed(s) of trust, if any, which shall take place as soon as reasonably possible for the closing attorney after Settlement. Upon Closing, the proceeds of sale shall be disbursed by the closing attorney in accordance with the settlement statement and the provisions of Chapter 45A of the North Carolina General Statutes. If the title update should reveal unexpected liens, encumbrances or other title defects, or if the closing attorney is not authorized to disburse all necessary funds, then the Closing shall be suspended and the Settlement deemed delayed under Paragraph 12 (Delay in Settlement/Closing).

**WARNING**: The North Carolina State Bar has determined that the performance of most acts and services required for a closing constitutes the practice of law and must be performed only by an attorney licensed to practice law in North Carolina. State law prohibits unlicensed individuals or firms from rendering legal services or advice. Although non-attorney settlement agents may perform limited services in connection with a closing, they may not perform all the acts and services required to complete a closing. A closing involves significant legal issues that should be handled by an attorney. Accordingly it is the position of the North Carolina Bar Association and the North Carolina Association of REALTORS® that all buyers should hire an attorney licensed in North Carolina to perform a closing.

(n) "**Special Assessments**": A charge against the Property by a governmental authority in addition to ad valorem taxes and recurring governmental service fees levied with such taxes, or by an owners' association in addition to any regular assessment (dues), either of which may be a lien against the Property. A Special Assessment may be either proposed or confirmed.

"**Proposed Special Assessment**": A Special Assessment that is under formal consideration but which has not been approved prior to Settlement.

"**Confirmed Special Assessment**": A Special Assessment that has been approved prior to Settlement whether payable in a lump sum or future installments.

**NOTE**: Any Proposed and Confirmed Special Assessments must be identified by Seller in paragraph 7(c), and Buyer's and Seller's respective responsibilities for Proposed and Confirmed Special Assessments are addressed in paragraphs 6(a) and 8(k).

## 2. FIXTURES AND EXCLUSIONS.

(a) **Specified Items**: Unless identified in subparagraph (d) below, the following items, including all related equipment and remote control devices, if any, are deemed fixtures and shall convey, included in the Purchase Price free of liens:

- Alarm and security systems (attached) for security, fire, smoke, carbon monoxide or other toxins with all related access codes, sensors, cameras, dedicated monitors, hard drives, video recorders, power supplies and cables; doorbells/chimes
- All stoves/ranges/ovens; built-in appliances; attached microwave oven; vent hood
- Antennas; satellite dishes and receivers
- Basketball goals and play equipment (permanently attached or in-ground)
- Ceiling and wall-attached fans; light fixtures (including existing bulbs)
- Fireplace insert; gas logs or starters; attached fireplace screens; wood or coal stoves
- Floor coverings (attached)
- Fuel tank(s) whether attached or buried and including any contents that have not been used, removed or resold to the fuel provider as of Settlement. NOTE: Seller's use, removal or resale of fuel in any fuel tank is subject to Seller's obligation under Paragraph 8(e) to provide working, existing utilities through the earlier of Closing or possession by Buyer.
- Garage door openers with all controls
- Generators that are permanently wired
- Invisible fencing with power supply, controls and receivers
- Landscape and outdoor trees and plants (except in moveable containers); raised garden; landscape and foundation lighting; outdoor sound systems; permanent irrigation systems and controls; rain barrels; landscape water features; address markers
- Mailboxes; mounted package and newspaper receptacles
- Mirrors attached to walls, ceilings, cabinets or doors; all bathroom wall mirrors
- Storage shed; utility building
- Swimming pool (excluding inflatable); spa; hot tub
- Solar electric and solar water heating systems
- Sump-pumps, radon fans and crawl space ventilators; de-humidifiers that are permanently wired
- Surface-mounting brackets for television and speakers; recess-mounted speakers; mounted intercom system
- Water supply equipment, including filters, conditioning and softener systems; re-circulating pumps; well pumps and tanks
- Window/Door blinds and shades, curtain and drapery rods and brackets, door and window screens and combination doors, awnings and storm windows

Buyer's initials _MK_  Seller's initials _____

(b) **Items Leased or Not Owned:** Any item which is leased or not owned by Seller, such as fuel tanks, antennas, satellite dishes and receivers, appliances, and alarm and security systems must be identified here and shall not convey:
N/A

(c) **Other Fixtures/Unspecified Items:** Unless identified in subparagraph (d) below, any other item legally considered a fixture is included in the Purchase Price free of liens.

(d) **Other Items That Do Not Convey:** The following items shall not convey *(identify those items to be excluded under subparagraphs (a) and (c))*: N/A

Seller shall repair any damage caused by removal of any items excepted above.

3. **PERSONAL PROPERTY:** The following personal property shall be transferred to Buyer at no value at Closing: Samsung refrigerator in kitchen

NOTE: Buyer is advised to consult with Buyer's lender to assure that the Personal Property items listed above can be included in this Contract.

4. **BUYER'S DUE DILIGENCE PROCESS:**

WARNING: **BUYER IS STRONGLY ENCOURAGED TO CONDUCT DUE DILIGENCE DURING THE DUE DILIGENCE PERIOD.** If Buyer is not satisfied with the results or progress of Buyer's Due Diligence, Buyer should terminate this Contract, PRIOR TO THE EXPIRATION OF THE DUE DILIGENCE PERIOD, unless Buyer can obtain a written extension from Seller. SELLER IS NOT OBLIGATED TO GRANT AN EXTENSION. Although Buyer may continue to investigate the Property following the expiration of the Due Diligence Period, Buyer's failure to deliver a Termination Notice to Seller prior to the expiration of the Due Diligence Period will constitute a waiver by Buyer of any right to terminate this Contract based on any matter relating to Buyer's Due Diligence. Provided however, following the Due Diligence Period, Buyer may still exercise a right to terminate if Seller fails to materially comply with any of Seller's obligations under Paragraph 8 of this Contract or for any other reason permitted under the terms of this Contract or North Carolina law.

(a) **Loan:** Buyer, at Buyer's expense, shall be entitled to pursue qualification for and approval of the Loan if any.

NOTE: Buyer's obligation to purchase the Property is not contingent on obtaining a Loan. Therefore, Buyer is advised to consult with Buyer's lender prior to signing this offer to assure that the Due Diligence Period allows sufficient time for the appraisal to be completed and for Buyer's lender to provide Buyer sufficient information to decide whether to proceed with or terminate the transaction.

(b) **Property Investigation:** Buyer or Buyer's agents or representatives, at Buyer's expense, shall be entitled to conduct all desired tests, surveys, appraisals, investigations, examinations and inspections of the Property as Buyer deems appropriate, including but NOT limited to the following:

(i) **Inspections:** Inspections to determine the condition of any improvements on the Property, the presence of unusual drainage conditions or evidence of excessive moisture adversely affecting any improvements on the Property, the presence of asbestos or existing environmental contamination, evidence of wood-destroying insects or damage therefrom, and the presence and level of radon gas on the Property.

(ii) **Review of Documents:** Review of the Declaration of Restrictive Covenants, Bylaws, Articles of Incorporation, Rules and Regulations, and other governing documents of any applicable owners' association and/or subdivision. If the Property is subject to regulation by an owners' association, it is recommended that Buyer review the completed Residential Property and Owners' Association Disclosure Statement provided by Seller prior to signing this offer. It is also recommended that the Buyer determine if the owners' association or its management company charges fees for providing information required by Buyer's lender or confirming restrictive covenant compliance.

(iii) **Insurance:** Investigation of the availability and cost of insurance for the Property.

(iv) **Appraisals:** An appraisal of the Property.

(v) **Survey:** A survey to determine whether the property is suitable for Buyer's intended use and the location of easements, setbacks, property boundaries and other issues which may or may not constitute title defects.

(vi) **Zoning and Governmental Regulation:** Investigation of current or proposed zoning or other governmental regulation that may affect Buyer's intended use of the Property, adjacent land uses, planned or proposed road construction, and school attendance zones.

Buyer's initials ___  Seller's initials ___ ___

STANDARD FORM 2-T
Revised 7/2019
© 7/2019

(vii) **Flood Hazard:** Investigation of potential flood hazards on the Property, and/or any requirement to purchase flood insurance in order to obtain the Loan.

(viii) **Utilities and Access:** Availability, quality, and obligations for maintenance of utilities including water, sewer, electric, gas, communication services, storm water management, and means of access to the Property and amenities.

(ix) **Streets/Roads:** Investigation of the status of the street/road upon which the Property fronts as well as any other street/road used to access the Property, including: (1) whether any street(s)/road(s) are public or private, (2) whether any street(s)/road(s) designated as public are accepted for maintenance by the State of NC or any municipality, or (3) if private or not accepted for public maintenance, the consequences and responsibility for maintenance and the existence, terms and funding of any maintenance agreements.

(x) **Fuel Tank:** Inspections to determine the existence, type and ownership of any fuel tank located on the Property.

> **NOTE:** Buyer is advised to consult with the owner of any leased fuel tank regarding the terms under which Buyer may lease the tank and obtain fuel.

(c) **Sale/Lease of Existing Property:** As noted in paragraph 5(b), unless otherwise provided in an addendum, this Contract is not conditioned upon the sale/lease or closing of other property owned by Buyer. Therefore, if Buyer must sell or lease other real property in order to qualify for a new loan or to otherwise complete the purchase of the Property, Buyer should seek to close on Buyer's other property prior to the end of the Due Diligence Period or be reasonably satisfied that closing on Buyer's other property will take place prior to the Settlement Date of this Contract.

(d) **Repair/Improvement Negotiations/Agreement:** Buyer acknowledges and understands that unless the parties agree otherwise, THE PROPERTY IS BEING SOLD IN ITS CURRENT CONDITION. Buyer and Seller acknowledge and understand that they may, but are not required to, engage in negotiations for repairs/improvements to the Property. Buyer is advised to make any repair/improvement requests in sufficient time to allow repair/improvement negotiations to be concluded prior to the expiration of the Due Diligence Period. Any agreement that the parties may reach with respect to repairs/improvements shall be considered an obligation of the parties and is an addition to this Contract and as such, must be in writing and signed by the parties in accordance with Paragraph 19.

> **NOTE:** See Paragraph 8(c), Access to Property and Paragraph 8(m), Negotiated Repairs/Improvements.

(e) **Buyer's Obligation to Repair Damage:** Buyer shall, at Buyer's expense, promptly repair any damage to the Property resulting from any activities of Buyer and Buyer's agents and contractors, but Buyer shall not be responsible for any damage caused by accepted practices either approved by the N.C. Home Inspector Licensure Board or applicable to any other N.C. licensed professional performing reasonable appraisals, tests, surveys, examinations and inspections of the Property. This repair obligation shall survive any termination of this Contract.

(f) **Indemnity:** Buyer will indemnify and hold Seller harmless from all loss, damage, claims, suits or costs, which shall arise out of any contract, agreement, or injury to any person or property as a result of any activities of Buyer and Buyer's agents and contractors relating to the Property except for any loss, damage, claim, suit or cost arising out of pre-existing conditions of the Property and/or out of Seller's negligence or willful acts or omissions. This indemnity shall survive this Contract and any termination hereof.

(g) **Buyer's Right to Terminate:** Buyer shall have the right to terminate this Contract for any reason or no reason, by delivering to Seller written notice of termination (the "Termination Notice") during the Due Diligence Period (or any agreed-upon written extension of the Due Diligence Period), *TIME BEING OF THE ESSENCE*. If Buyer timely delivers the Termination Notice, this Contract shall be terminated and the Earnest Money Deposit shall be refunded to Buyer.

(h) **CLOSING SHALL CONSTITUTE ACCEPTANCE OF THE PROPERTY IN ITS THEN EXISTING CONDITION UNLESS PROVISION IS OTHERWISE MADE IN WRITING.**

5. **BUYER REPRESENTATIONS:**

(a) **Loan:** Buyer [X] does [ ] does not intend to obtain a new loan in order to purchase the Property. If Buyer is obtaining a new loan, Buyer intends to obtain a loan as follows: [ ] FHA [ ] VA (attach FHA/VA Financing Addendum) [X] Conventional [ ] Down Payment Assistance Program [ ] Other: _____ loan at a [X] Fixed Rate [ ] Adjustable Rate in the principal amount of _____ plus any financed VA Funding Fee or FHA MIP for a term of ___30___ year(s), at an initial interest rate not to exceed ___4.200___ % per annum (the "Loan").

> **NOTE:** Buyer's obligations under this Contract are not conditioned upon obtaining or closing any loan. Some mortgage loan programs and Down Payment Assistance programs selected by Buyer may impose additional repair obligations, conditions or costs upon Seller or Buyer, and more information may be needed.

Page 5 of 14

Buyer's initials _____ Seller's initials _____

STANDARD FORM 2-T
Revised 7/2019
© 7/2019

NOTE: If Buyer does not intend to obtain a new loan, Seller is advised, prior to signing this offer, to obtain documentation from Buyer which demonstrates that Buyer will be able to close on the Property without the necessity of obtaining a new loan.

(b) **Other Property:** Buyer ☐ DOES ☒ DOES NOT have to sell or lease other real property in order to qualify for a new loan or to complete the purchase. *(Complete the following only if Buyer DOES have to sell or lease other real property:)*
Other Property Address: _____

☐ *(Check if applicable)* Buyer's other property IS under contract as of the date of this offer, and a copy of the contract has either been previously provided to Seller or accompanies this offer. *(Buyer may mark out any confidential information, such as the purchase price and the buyer's identity, prior to providing a copy of the contract to Seller.)* Failure to provide a copy of the contract shall not prevent this offer from becoming a binding contract; however, SELLER IS STRONGLY ENCOURAGED TO OBTAIN AND REVIEW THE CONTRACT ON BUYER'S PROPERTY PRIOR TO ACCEPTING THIS OFFER.

☐ *(Check if applicable)* Buyer's other property IS NOT under contract as of the date of this offer. Buyer's property *(check only ONE of the following options)*:
☐ is listed with and actively marketed by a licensed real estate broker.
☐ will be listed with and actively marketed by a licensed real estate broker.
☐ Buyer is attempting to sell/lease the Buyer's Property without the assistance of a licensed real estate broker.

NOTE: This Contract is NOT conditioned upon the sale/lease or closing of Buyer's other property. If the parties agree to make this Contract conditioned on a sale/lease or closing of Buyer's other property, an appropriate contingency addendum should be drafted by a North Carolina real estate attorney and added to this Contract.

(c) **Performance of Buyer's Financial Obligations:** To the best of Buyer's knowledge, there are no other circumstances or conditions existing as of the date of this offer that would prohibit Buyer from performing Buyer's financial obligations in accordance with this Contract, except as may be specifically set forth herein.

(d) **Residential Property and Owners' Association Property Disclosure Statement** *(check only one)*:
☒ Buyer has received a signed copy of the N.C. Residential Property and Owners' Association Disclosure Statement prior to the signing of this offer.
☐ Buyer has NOT received a signed copy of the N.C. Residential Property and Owners' Association Disclosure Statement prior to the signing of this offer and shall have the right to terminate or withdraw this Contract without penalty (including a refund of any Due Diligence Fee) prior to WHICHEVER OF THE FOLLOWING EVENTS OCCURS FIRST: (1) the end of the third calendar day following receipt of the Disclosure Statement; (2) the end of the third calendar day following the Effective Date; or (3) Settlement or occupancy by Buyer in the case of a sale or exchange.
☐ Exempt from N.C. Residential Property and Owners' Association Disclosure Statement because (SEE GUIDELINES): _____

(e) **Mineral and Oil and Gas Rights Mandatory Disclosure Statement** *(check only one)*:
☒ Buyer has received a signed copy of the N.C. Mineral and Oil and Gas Rights Mandatory Disclosure Statement prior to the signing of this offer.
☐ Buyer has NOT received a signed copy of the N.C. Mineral and Oil and Gas Rights Mandatory Disclosure Statement prior to the signing of this offer and shall have the right to terminate or withdraw this Contract without penalty (including a refund of any Due Diligence Fee) prior to WHICHEVER OF THE FOLLOWING EVENTS OCCURS FIRST: (1) the end of the third calendar day following receipt of the Disclosure Statement; (2) the end of the third calendar day following the Effective Date; or (3) Settlement or occupancy by Buyer in the case of a sale or exchange.
☐ Exempt from N.C. Mineral and Oil and Gas Rights Mandatory Disclosure Statement because (SEE GUIDELINES): _____

Buyer's receipt of a Mineral and Oil and Gas Rights Mandatory Disclosure Statement does not modify or limit the obligations of Seller under Paragraph 8(g) of this Contract and shall not constitute the assumption or approval by Buyer of any severance of mineral and/or oil and gas rights, except as may be assumed or specifically approved by Buyer in writing.

NOTE: The parties are advised to consult with a NC attorney prior to signing this Contract if severance of mineral and/or oil and gas rights has occurred or is intended.

6. **BUYER OBLIGATIONS:**
(a) **Responsibility for Proposed Special Assessments:** Buyer shall take title subject to all Proposed Special Assessments.
(b) **Responsibility for Certain Costs:** Buyer shall be responsible for all costs with respect to:
(i) any loan obtained by Buyer, including charges by an owners association and/or management company as agent of an owners' association for providing information required by Buyer's lender;

STANDARD FORM 2-T
Revised 7/2019
© 7/2019

Buyer's initials _____ Seller's initials _____ _____

(ii) charges required by an owners' association declaration to be paid by Buyer for Buyer's future use and enjoyment of the Property, including, without limitation, working capital contributions, membership fees, or charges for Buyer's use of the common elements and/or services provided to Buyer, such as "move-in fees";
(iii) determining restrictive covenant compliance;
(iv) appraisal;
(v) title search;
(vi) title insurance;
(vii) any fees charged by the closing attorney for the preparation of the Closing Disclosure, Seller Disclosure and any other settlement statement;
(viii) recording the deed; and
(ix) preparation and recording of all instruments required to secure the balance of the Purchase Price unpaid at Settlement.

(c) **Authorization to Disclose Information:** Buyer authorizes the Buyer's lender(s), the parties' real estate agent(s) and closing attorney: (1) to provide this Contract to any appraiser employed by Buyer or by Buyer's lender(s); and (2) to release and disclose any buyer's closing disclosure, settlement statement and/or disbursement summary, or any information therein, to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

7. **SELLER REPRESENTATIONS:**

(a) **Ownership:** Seller represents that Seller:
[X] has owned the Property for at least one year.
[ ] has owned the Property for less than one year.
[ ] does not yet own the Property.

(b) **Lead-Based Paint** *(check if applicable):*
[ ] The Property is residential and was built prior to 1978 (Attach Lead-Based Paint or Lead-Based Paint Hazards Disclosure Addendum (Standard Form 2A9-T)).

(c) **Assessments:** To the best of Seller's knowledge there [ ] are [X] are not any Proposed Special Assessments. If any Proposed Special Assessments, identify: _____

Seller warrants that there [ ] are [X] are not any Confirmed Special Assessments. If any Confirmed Special Assessments, identify: _____

**NOTE:** Buyer's and Seller's respective responsibilities for Proposed and Confirmed Special Assessments are addressed in paragraphs 6(a) and 8(k).

(d) **Owners' Association(s) and Dues:** Seller authorizes and directs any owners' association, any management company of the owners' association, any insurance company and any attorney who has previously represented the Seller to release to Buyer, Buyer's agents, representative, closing attorney or lender true and accurate copies of the following items affecting the Property, including any amendments:
- Seller's statement of account
- master insurance policy showing the coverage provided and the deductible amount
- Declaration and Restrictive Covenants
- Rules and Regulations
- Articles of Incorporation
- By laws of the owners' association
- current financial statement and budget of the owners' association
- parking restrictions and information
- architectural guidelines

[ ] (specify name of association): _____N/A_____ whose regular assessments ("dues") are $ _____ per _____. The name, address and telephone number of the president of the owners' association or the association manager is: _____

Owners' association website address, if any: _____

[ ] (specify name of association): _____ whose regular assessments ("dues") are $ _____ per _____. The name, address and telephone number of the president of the owners' association or the association manager is: _____

Owners' association website address, if any: _____

**8. SELLER OBLIGATIONS:**

(a) **Evidence of Title, Payoff Statement(s) and Non-Foreign Status:**

(i) Seller agrees to use best efforts to provide to the closing attorney as soon as reasonably possible after the Effective Date, copies of all title information in possession of or available to Seller, including but not limited to: title insurance policies, attorney's opinions on title, surveys, covenants, deeds, notes and deeds of trust, leases, and easements relating to the Property.

(ii) Seller shall provide to the closing attorney all information needed to obtain a written payoff statement from any lender(s) regarding any security interest in the Property as soon as reasonably possible after the Effective Date, and Seller designates the closing attorney as Seller's agent with express authority to request and obtain on Seller's behalf payoff statements and/or short-pay statements from any such lender(s).

(iii) If Seller is not a foreign person as defined by the Foreign Investment in Real Property Tax Act, Seller shall also provide to the closing attorney a non-foreign status affidavit (pursuant to the Foreign Investment in Real Property Tax Act). In the event Seller shall not provide a non-foreign status affidavit, Seller acknowledges that there may be withholding as provided by the Internal Revenue Code.

(b) **Authorization to Disclose Information:** Seller authorizes: (1) any attorney presently or previously representing Seller to release and disclose any title insurance policy in such attorney's file to Buyer and both Buyer's and Seller's agents and attorneys; (2) the Property's title insurer or its agent to release and disclose all materials in the Property's title insurer's (or title insurer's agent's) file to Buyer and both Buyer's and Seller's agents and attorneys and (3) the closing attorney to release and disclose any seller's closing disclosure, settlement statement and/or disbursement summary, or any information therein, to the parties to this transaction, their real estate agent(s) and Buyer's lender(s).

(c) **Access to Property:** Seller shall provide reasonable access to the Property through the earlier of Closing or possession by Buyer, including, but not limited to, allowing Buyer and/or Buyer's agents or representatives, an opportunity to (I) conduct Due Diligence, (ii) verify the satisfactory completion of negotiated repairs/improvements, and (iii) conduct a final walk-through inspection of the Property. Seller's obligation includes providing existing utilities operating at Seller's cost, including any connections and de-winterizing.

> NOTE: See WARNING in paragraph 4 above for limitation on Buyer's right to terminate this Contract as a result of Buyer's continued investigation of the Property following the expiration of the Due Diligence Period.

(d) **Removal of Seller's Property:** Seller shall remove, by the date possession is made available to Buyer, all personal property which is not a part of the purchase and all garbage and debris from the Property.

(e) **Affidavit and Indemnification Agreement:** Seller shall furnish at Settlement an affidavit(s) and indemnification agreement(s) in form satisfactory to Buyer and Buyer's title insurer, if any, executed by Seller and any person or entity who has performed or furnished labor, services, materials or rental equipment to the Property within 120 days prior to the date of Settlement and who may be entitled to claim a lien against the Property as described in N.C.G.S. §44A-8 verifying that each such person or entity has been paid in full and agreeing to indemnify Buyer, Buyer's lender(s) and Buyer's title insurer against all loss from any cause or claim arising therefrom.

(f) **Designation of Lien Agent, Payment and Satisfaction of Liens:** If required by N.C.G.S. §44A-11.1, Seller shall have designated a Lien Agent, and Seller shall deliver to Buyer as soon as reasonably possible a copy of the appointment of Lien Agent. All deeds of trust, deferred ad valorem taxes, liens and other charges against the Property, not assumed by Buyer, must be paid and satisfied by Seller prior to or at Settlement such that cancellation may be promptly obtained following Closing. Seller shall remain obligated to obtain any such cancellations following Closing.

(g) **Good Title, Legal Access:** Seller shall execute and deliver a GENERAL WARRANTY DEED for the Property in recordable form no later than Settlement, which shall convey fee simple marketable and insurable title, without exception for mechanics' liens, and free of any other liens, encumbrances or defects, including those which would be revealed by a current and accurate survey of the Property, except: ad valorem taxes for the current year(prorated through the date of Settlement); utility easements and unviolated covenants, conditions or restrictions that do not materially affect the value of the Property; and such other liens, encumbrances or defects as may be assumed or specifically approved by Buyer in writing. The Property must have legal access to a public right of way.

> NOTE: Buyer's failure to conduct a survey or examine title of the Property, prior to the expiration of the Due Diligence Period does not relieve the Seller of their obligation to deliver good title under this paragraph.

> NOTE: If any sale of the Property may be a "short sale," consideration should be given to attaching a Short Sale Addendum Form2A14-T) as an addendum to this Contract.

Page 8 of 14

Buyer's initials _MR_     Seller's initials ____

STANDARD FORM 2-T
Revised 7/2019
© 7/2019

(h) **Deed, Taxes and Fees:** Seller shall pay for preparation of a deed and all other documents necessary to perform Seller's obligations under this Contract, and for state and county excise taxes, and any deferred, discounted or rollback taxes, and local conveyance fees required by law. The deed is to be made to: __Michele Kelso__

(i) **Agreement to Pay Buyer Expenses:** Seller shall pay at Settlement $ __3,500.00__ toward any of Buyer's expenses associated with the purchase of the Property, at the discretion of Buyer and/or lender, if any, including any FHA/VA lender and inspection costs that Buyer is not permitted to pay.

NOTE: Parties should review the FHA/VA Addendum prior to entering an amount in Paragraph 8(i). Certain FHA/VA lender and inspection costs CANNOT be paid by Buyer at Settlement and the amount of these should be included in the blank above.

(j) **Owners' Association Fees/Charges:** Seller shall pay: (i) any fees required for confirming Seller's account payment information on owners' association dues or assessments for payment or proration; (ii) any fees imposed by an owners' association and/or a management company as agent of the owners' association in connection with the transaction contemplated by this Contract other than those fees required to be paid by Buyer under paragraph 6(b) above; and (iii) fees incurred by Seller in completing the Residential Property and Owners' Association Disclosure Statement, and resale or other certificates related to a proposed sale of the Property.

(k) **Payment of Confirmed Special Assessments:** Seller shall pay, in full at Settlement, all Confirmed Special Assessments, whether payable in a lump sum or future installments, provided that the amount thereof can be reasonably determined or estimated. The payment of such estimated amount shall be the final payment between the Parties.

(l) **Late Listing Penalties:** All property tax late listing penalties, if any, shall be paid by Seller.

(m) **Negotiated Repairs/Improvements:** Negotiated repairs/improvements shall be made in a good and workmanlike manner and Buyer shall have the right to verify same prior to Settlement.

(n) **Seller's Failure to Comply or Breach:** If Seller fails to materially comply with any of Seller's obligations under this Paragraph 8 or Seller materially breaches this Contract, and Buyer elects to terminate this Contract as a result of such failure or breach, then the Earnest Money Deposit and the Due Diligence Fee shall be refunded to Buyer and Seller shall reimburse to Buyer the reasonable costs actually incurred by Buyer in connection with Buyer's Due Diligence without affecting any other remedies. If legal proceedings are brought by Buyer against Seller to recover the Earnest Money Deposit, the Due Diligence Fee and/or the reasonable costs actually incurred by Buyer in connection with Buyer's Due Diligence, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorney fees and court costs incurred in connection with the proceeding.

9. **PRORATIONS AND ADJUSTMENTS:** Unless otherwise provided, the following items shall be prorated, with Seller responsible for the prorated amounts through the date of Settlement, and either adjusted between the parties or paid at Settlement:
   (a) **Taxes on Real Property:** Ad valorem taxes and recurring governmental service fees levied with such taxes on real property shall be prorated on a calendar year basis;
   (b) **Taxes on Personal Property:** Ad valorem taxes on personal property for the entire year shall be paid by Seller unless the personal property is conveyed to Buyer, in which case, the personal property taxes shall be prorated on a calendar year basis;
   (c) **Rents:** Rents, if any, for the Property;
   (d) **Dues:** Owners' association regular assessments (dues) and other like charges.

10. **HOME WARRANTY:** Select one of the following:
    [X] No home warranty is to be provided by Seller.
    [ ] Buyer may obtain a one-year home warranty at a cost not to exceed $ _____ which includes sales tax and Seller agrees to pay for it at Settlement.
    [ ] Seller has obtained and will provide a one-year home warranty from _____ at a cost of $ _____ which includes sales tax and will pay for it at Settlement.

NOTE: Home warranties typically have limitations on and conditions to coverage. Refer specific questions to the home warranty company.

11. **RISK OF LOSS/CONDITION OF PROPERTY AT CLOSING:** The risk of loss or damage by fire or other casualty prior to Closing shall be upon Seller. Seller is advised not to cancel existing insurance on the Property until after confirming recordation of the deed.

Buyer's obligation to complete the transaction contemplated by this Contract shall be contingent upon the Property being in substantially the same or better condition at Closing as on the date of this offer, reasonable wear and tear excepted. If the Property is not in substantially the same or better condition at Closing as on the date of this offer, reasonable wear and tear excepted, Buyer may terminate this Contract by written notice delivered to Seller and the Earnest Money Deposit shall be refunded to Buyer. If the Property is not in such condition and Buyer does NOT elect to terminate this Contract, Buyer shall be entitled to receive, in addition to the Property, the proceeds of any insurance claim filed by Seller on account of any damage or destruction to the Property.

**12. DELAY IN SETTLEMENT/CLOSING:** Absent agreement to the contrary in this Contract or any subsequent modification thereto, if a party is unable to complete Settlement by the Settlement Date but intends to complete the transaction and is acting in good faith and with reasonable diligence to proceed to Settlement ("Delaying Party"), and if the other party is ready, willing and able to complete Settlement on the Settlement Date ("Non-Delaying Party") then the Delaying Party shall give as much notice as possible to the Non-Delaying Party and closing attorney and shall be entitled to a delay in Settlement. If the parties fail to complete Settlement and Closing within fourteen (14) days of the Settlement Date (including any amended Settlement Date agreed to in writing by the parties) or to otherwise extend the Settlement Date by written agreement, then the Delaying Party shall be in breach and the Non-Delaying Party may terminate this Contract and shall be entitled to enforce any remedies available to such party under this Contract for the breach.

**13. POSSESSION:** Possession, including all means of access to the Property (keys, codes including security codes, garage door openers, electronic devices, etc.), shall be delivered upon Closing as defined in Paragraph 1(m) unless otherwise provided below:
- ☐ A Buyer Possession Before Closing Agreement is attached (Standard Form 2A7-T)
- ☐ A Seller Possession After Closing Agreement is attached (Standard Form 2A8-T)
- ☐ Possession is subject to rights of tenant(s)

NOTE: Consider attaching Additional Provisions Addendum (Form 2A11-T) or Vacation Rental Addendum (Form 2A13-T)

**14. ADDENDA:** CHECK ALL STANDARD ADDENDA THAT MAY BE A PART OF THIS CONTRACT, IF ANY, AND ATTACH HERETO. ITEMIZE ALL OTHER ADDENDA TO THIS CONTRACT, IF ANY, AND ATTACH HERETO.

- ☐ Additional Provisions Addendum (Form 2A11-T)
- ☐ Additional Signatures Addendum (Form 3-T)
- ☐ Back-Up Contract Addendum (Form 2A1-T)
- ☐ FHA/VA Financing Addendum (Form 2A4-T)
- ☐ Lead-Based Paint Or Lead-Based Paint Hazard Addendum (Form 2A9-T)
- ☐ Loan Assumption Addendum (Form 2A6-T)
- ☐ New Construction Addendum (Form 2A3-T)
- ☐ Owners' Association Disclosure And Condominium Resale Statement Addendum (Form 2A12-T)
- ☐ Seller Financing Addendum (Form 2A5-T)
- ☒ Short Sale Addendum (Form 2A14-T)
- ☐ Vacation Rental Addendum (Form 2A13-T)

☒ Identify other attorney or party drafted addenda: **John Rhyne Attorney Addendum**

NOTE: UNDER NORTH CAROLINA LAW, REAL ESTATE BROKERS ARE NOT PERMITTED TO DRAFT ADDENDA TO THIS CONTRACT.

**15. ASSIGNMENTS:** This Contract may not be assigned without the written consent of all parties except in connection with a tax-deferred exchange, but if assigned by agreement, then this Contract shall be binding on the assignee and assignee's heirs and successors.

**16. TAX-DEFERRED EXCHANGE:** In the event Buyer or Seller desires to effect a tax-deferred exchange in connection with the conveyance of the Property, Buyer and Seller agree to cooperate in effecting such exchange; provided, however, that the exchanging party shall be responsible for all additional costs associated with such exchange, and provided further, that a non-exchanging party shall not assume any additional liability with respect to such tax-deferred exchange. Buyer and Seller shall execute such additional documents, including assignment of this Contract in connection therewith, at no cost to the non-exchanging party, as shall be required to give effect to this provision.

**17. PARTIES:** This Contract shall be binding upon and shall inure to the benefit of Buyer and Seller and their respective heirs, successors and assigns. As used herein, words in the singular include the plural and the masculine includes the feminine and neuter genders, as appropriate.

**18. SURVIVAL:** If any provision herein contained which by its nature and effect is required to be observed, kept or performed after the Closing, it shall survive the Closing and remain binding upon and for the benefit of the parties hereto until fully observed, kept or performed.

19. **ENTIRE AGREEMENT:** This Contract contains the entire agreement of the parties and there are no representations, inducements or other provisions other than those expressed herein. All changes, additions or deletions hereto must be in writing and signed by all parties. Nothing contained herein shall alter any agreement between a REALTOR® or broker and Seller or Buyer as contained in any listing agreement, buyer agency agreement, or any other agency agreement between them.

20. **CONDUCT OF TRANSACTION:** The parties agree that any action between them relating to the transaction contemplated by this Contract may be conducted by electronic means, including the signing of this Contract by one or more of them and any notice or communication given in connection with this Contract. Any written notice or communication may be transmitted to any mailing address, e-mail address or fax number set forth in the "Notice Information" section below. Any notice or communication to be given to a party herein, and any fee, deposit or other payment to be delivered to a party herein, may be given to the party or to such party's agent. Seller and Buyer agree that the "Notice Information" and "Acknowledgment of Receipt of Monies" sections below shall not constitute a material part of this Contract, and that the addition or modification of any information therein shall not constitute a rejection of an offer or the creation of a counteroffer.

21. **EXECUTION:** This Contract may be signed in multiple originals or counterparts, all of which together constitute one and the same instrument.

22. **COMPUTATION OF DAYS/TIME OF DAY:** Unless otherwise provided, for purposes of this Contract, the term "days" shall mean consecutive calendar days, including Saturdays, Sundays, and holidays, whether federal, state, local or religious. For the purposes of calculating days, the count of "days" shall begin on the day following the day upon which any act or notice as provided in this Contract was required to be performed or made. Any reference to a date or time of day shall refer to the date and/or time of day in the State of North Carolina.

[THIS SPACE INTENTIONALLY LEFT BLANK]

Page 11 of 14

Buyer's initials _____  Seller's initials _____

STANDARD FORM 2-T
Revised 7/2019
© 7/2019

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. AND THE NORTH CAROLINA BAR ASSOCIATION MAKE NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DO NOT UNDERSTAND THIS FORM OR FEEL THAT IT DOES NOT PROVIDE FOR YOUR LEGAL NEEDS, YOU SHOULD CONSULT A NORTH CAROLINA REAL ESTATE ATTORNEY BEFORE YOU SIGN IT.

This offer shall become a binding contract on the Effective Date. Unless specifically provided otherwise, Buyer's failure to timely deliver any fee, deposit or other payment provided for herein shall not prevent this offer from becoming a binding contract, provided that any such failure shall give Seller certain rights to terminate the contract as described herein or as otherwise permitted by law.

Date: 03/19/2020

Buyer: *Michele Kelso* (signed)
Michele Kelso

Date: _____

Buyer: _____

Entity Buyer: _____
(Name of LLC/Corporation/Partnership/Trust/etc.)
By: _____
Name: _____
Print Name
Title: _____
Date: _____

Date: 3-19-2020

Seller: *Roy L. Moore Jr* (signed)
Roy L. Moore Jr

Date: 3-19-2020

Seller: *Veronica A. Moore* (signed)
Veronica A. Moore

Entity Seller: _____
(Name of LLC/Corporation/Partnership/Trust/etc.)
By: _____
Name: _____
Print Name
Title: _____
Date: _____

## WIRE FRAUD WARNING

TO BUYERS: BEFORE SENDING ANY WIRE, YOU SHOULD CALL THE CLOSING ATTORNEY'S OFFICE TO VERIFY THE INSTRUCTIONS. IF YOU RECEIVE WIRING INSTRUCTIONS FOR A DIFFERENT BANK, BRANCH LOCATION, ACCOUNT NAME OR ACCOUNT NUMBER, THEY SHOULD BE PRESUMED FRAUDULENT. DO NOT SEND ANY FUNDS AND CONTACT THE CLOSING ATTORNEY'S OFFICE IMMEDIATELY.

TO SELLERS: IF YOUR PROCEEDS WILL BE WIRED, IT IS RECOMMENDED THAT YOU PROVIDE WIRING INSTRUCTIONS AT CLOSING IN WRITING IN THE PRESENCE OF THE ATTORNEY. IF YOU ARE UNABLE TO ATTEND CLOSING, YOU MAY BE REQUIRED TO SEND AN ORIGINAL NOTARIZED DIRECTIVE TO THE CLOSING ATTORNEY'S OFFICE CONTAINING THE WIRING INSTRUCTIONS. THIS MAY BE SENT WITH THE DEED, LIEN WAIVER AND TAX FORMS IF THOSE DOCUMENTS ARE BEING PREPARED FOR YOU BY THE CLOSING ATTORNEY. AT A MINIMUM, YOU SHOULD CALL THE CLOSING ATTORNEY'S OFFICE TO PROVIDE THE WIRE INSTRUCTIONS. THE WIRE INSTRUCTIONS SHOULD BE VERIFIED OVER THE TELEPHONE VIA A CALL TO YOU INITIATED BY THE CLOSING ATTORNEY'S OFFICE TO ENSURE THAT THEY ARE NOT FROM A FRAUDULENT SOURCE.

WHETHER YOU ARE A BUYER OR A SELLER, YOU SHOULD CALL THE CLOSING ATTORNEY'S OFFICE AT A NUMBER THAT IS INDEPENDENTLY OBTAINED. TO ENSURE THAT YOUR CONTACT IS LEGITIMATE, YOU SHOULD NOT RELY ON A PHONE NUMBER IN AN EMAIL FROM THE CLOSING ATTORNEY'S OFFICE, YOUR REAL ESTATE AGENT OR ANYONE ELSE.

## NOTICE INFORMATION

> NOTE: INSERT AT LEAST ONE ADDRESS AND/OR ELECTRONIC DELIVERY ADDRESS EACH PARTY AND AGENT APPROVES FOR THE RECEIPT OF ANY NOTICE CONTEMPLATED BY THIS CONTRACT. INSERT "N/A" FOR ANY WHICH ARE NOT APPROVED.

**BUYER NOTICE ADDRESS:**

Mailing Address: _____

Buyer Fax#: _____

Buyer E-mail: _____

**SELLER NOTICE ADDRESS:**

Mailing Address: <u>103 Green Run Ct, Elizabeth City, NC 27909</u>

Seller Fax#: _____

Seller E-mail: <u>veronikamoore@yahoo.com</u>

### CONFIRMATION OF AGENCY/NOTICE ADDRESSES

Selling Firm Name: <u>Coldwell Banker Advantage</u>
Acting as [X] Buyer's Agent [ ] Seller's (sub)Agent [ ] Dual Agent
Firm License #: _____
Mailing Address: <u>600 Dr Calvin Jones Hwy Suite 100, Wake Forest, NC 27587</u>

Individual Selling Agent: <u>Anita Spangler</u>
[ ] Acting as a Designated Dual Agent (check only if applicable)

Selling Agent License #: <u>245426</u>

Selling Agent Phone#: <u>(757)777-8071</u>

Selling Agent Fax#: _____

Selling Agent E-mail: <u>askforanita@yahoo.com</u>

Listing Firm Name: <u>Howard Hanna WEW</u>
Acting as [X] Seller's Agent [ ] Dual Agent
Firm License #: _____
Mailing Address: <u>529 South Hughes Blvd., Elizabeth City, NC 27909</u>

Individual Listing Agent: <u>Debbie Sawyer</u>
[ ] Acting as a Designated Dual Agent (check only if applicable)

Listing Agent License #: <u>171427</u>

Listing Agent Phone#: <u>(252)679-3415</u>

Listing Agent Fax#: <u>(757)217-3925</u>

Listing Agent E-mail: <u>debbiesawyer@howardhanna.com</u>

[THIS SPACE INTENTIONALLY LEFT BLANK]

Page 13 of 14


Buyer's initials _____  Seller's initials _____

STANDARD FORM 2-T
Revised 7/2019
© 7/2019

## ACKNOWLEDGMENT OF RECEIPT OF MONIES

Seller: __Roy L Moore Jr, Veronica A Moore__ ("Seller")

Buyer: __Michele Kelso__ ("Buyer")

Property Address: __103 Grum Run Ct, Elizabeth City, NC  27909-5179__ ("Property")

---

☐ **LISTING AGENT ACKNOWLEDGMENT OF RECEIPT OF DUE DILIGENCE FEE**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Seller of a Due Diligence Fee in the amount of $ _____, receipt of which Listing Agent hereby acknowledges.

Date: _____   Firm: __Howard Hanna WEW__

By: _____
(Signature)
__Debbie Sawyer__
(Print name)

---

☐ **SELLER ACKNOWLEDGMENT OF RECEIPT OF DUE DILIGENCE FEE**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Seller of a Due Diligence Fee in the amount of $ _____, receipt of which Seller hereby acknowledges.

Date: _____   Seller: _____
(Signature)
__Roy L Moore Jr__

Date: _____   Seller: _____
(Signature)
__Veronica A Moore__

---

☒ **ESCROW AGENT ACKNOWLEDGMENT OF RECEIPT OF INITIAL EARNEST MONEY DEPOSIT**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Escrow Agent of an Initial Earnest Money Deposit in the amount of $ __1,000.00__. Escrow Agent as identified in Paragraph 1(f) of the Offer to Purchase and Contract hereby acknowledges receipt of the Initial Earnest Money Deposit and agrees to hold and disburse the same in accordance with the terms of the Offer to Purchase and Contract.

Date: _____   Firm: __Trimpi and Nash LLP__

By: _____
(Signature)

_____
(Print name)

---

☐ **ESCROW AGENT ACKNOWLEDGMENT OF RECEIPT OF (ADDITIONAL) EARNEST MONEY DEPOSIT**

Paragraph 1(d) of the Offer to Purchase and Contract between Buyer and Seller for the sale of the Property provides for the payment to Escrow Agent of an (Additional) Earnest Money Deposit in the amount of $ _____. Escrow Agent as identified in Paragraph 1(f) of the Offer to Purchase and Contract hereby acknowledges receipt of the (Additional) Earnest Money Deposit and agrees to hold and disburse the same in accordance with the terms of the Offer to Purchase and Contract.

Date: _____   Firm: __Trimpi and Nash LLP__

Time: _____ ☐ A.M. ☐ P.M.   By: _____
(Signature)

_____
(Print name)

STANDARD FORM 2-T
Revised 7/2019
© 7/2019

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Ray and Veronica

**JOHN G. RHYNE**
*Attorney at Law*
P.O. Box 8327
Wilson, NC 27893
252-234-9933 (telephone)
252-991-5567 (telefax)

johnrhyne@johnrhynelaw.com                              www.johnrhynelaw.com

## ADDENDUM TO OFFER TO PURCHASE AND CONTRACT AND SHORT SALE ADDENDUM

March 19, 2020

Re:   Roy L. Moore, Jr.

To whom it concerns:

This office represents Roy L. Moore, Jr. in a pending Chapter 13 bankruptcy case. This case is docketed as 16-02872-5-JNC. In order to sell the house, this office will file the following motions. A motion is a request for the Bankruptcy Court to take certain action:

1. Motion for Private Sale – this motion will seek an order from the Court authorizing the sale of the property to Michele Kelso.

2. Motion to Sell Free and Clear of Liens – this motion will seek an order from the Court allowing the sale regardless of the liens (mortgages) against the property. If allowed, upon a sale, the proceeds, after closing costs and allowed fees, would be distributed to the Chapter 13 Bankruptcy Trustee, or another party as directed by the Court, and the liens of the mortgage holders would transfer to the proceeds. This will allow the property to be sold even if there are not enough proceeds to pay to the lenders.

Upon receipt of the fully executed contract, this office will prepare and file the appropriate Motions with the Court. Normally, Orders allowing the requested actions are entered within 30 days, but I have no control over this.

With best regards,

*/s/ John G. Rhyne*
John G. Rhyne

*/s/ Roy L. Moore Jr.*
Roy L. Moore Jr.

*/s/ Veronika A. Moore*
Veronika A. Moore

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: |
| ROY LEE MOORE, JR.<br>Debtor | 16-02872-5-JNC<br>CHAPTER 13 |

NOTICE OF MOTION
AND CERTIFICATE OF SERVICE

The undersigned has filed a *Motion For Proposed Private Sale* with the Court to obtain the relief stated in the foregoing motion.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant the relief sought in Motion, or if you want the Court to consider your views on the Motion, then on or before **April 16, 2020**, unless otherwise ordered, you or your attorney must file with the Court, pursuant to Local Rule 9013-1 and 9014-1, a written response, an answer explaining your position, and a request for hearing at:

Clerk,
United States Bankruptcy Court
P.O. Box 791
Raleigh, NC 27602

If you mail your request/response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to the undersigned as well as the additional parties shown on the attached Certificate of Service.

If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the motion at a date, time and place to be later set and all parties will be notified accordingly.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

Date: March 23, 2020.

/s/ John G. Rhyne
John G. Rhyne
State Bar No: 17570
P.O. Box 8327
Wilson, NC 27893
Telephone: (252) 234-9933
Telecopier: (252) 991-5567
johnrhyne@johnrhynelaw.com

## CERTIFICATE OF SERVICE

I, John G. Rhyne, of the Law firm of John G. Rhyne, Attorney at Law, of P.O. Box 8327, Wilson, North Carolina 27893, certify:

That I am, and all times hereinafter mentioned was, more than eighteen (18) years of age:

That on March 23, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. By filing the pleading using the CM/ECF system, the parties listed below will either receive notification of such filing by way of CM/ECF or by depositing copies thereof in the United States mail, first class mail, postage prepaid, an envelope addressed as shown below.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: March 23, 2020.

                                               s/ John G. Rhyne
                                               John G. Rhyne
                                               P.O. Box 8327
                                               Wilson, NC 27893
                                               Telephone (252) 234-9933
                                               Telecopier (252) 991-5567

RECIPIENTS:

Attached Matrix

Mr. Roy Lee Moore, Jr
103 Green Run Court
Elizabeth City, NC 279009

Joseph A. Bledsoe, III
Chapter 13 Trustee
P.O. Box 1618
New Bern, NC 28563

Bankruptcy Administrator, EDNC
434 Fayetteville Street Mall
Suite 640
Raleigh, NC 27601

North Carolina Department of Revenue
Attn: Bankruptcy Section
P.O. Box 1168
Raleigh, NC 27602

North Carolina Department of Commerce
Division of Employment Security
P.O. Box 26504
Raleigh, NC 27611

U.S. Securities & Exchange Commission
Atlanta Regional Office
950 E Paces Ferry Rd. NE, Suite 900
Atlanta, GA 30326-1382

Secretary of the Treasury
1500 Pennsylvania Ave., NW
Washington, DC 20220

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101-7346

IRS/Office of Chief Counsel
Alamance Bldg., Mail Stop 9
4905 Koger Blvd.
Greensboro, NC 27407-2734

Civil Process Clerk of US Attorney
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601

The Honorable William Barr
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Attorney General of North Carolina
901 Mail Service Center
114 W. Edenton Street
Raleigh, NC 27699-9001

Albemarle Hospital
Attn: Officer
P.O. Box 910
Edenton, NC 27932

Bank of America
Attn: Officer
300 East Main Street
Norfolk, VA 23510

Bank of America
Attn: Officer
P.O. Box 15019
Wilmington, DE 19886

Bank of America, N.A.
Attn: Officer
P.O. Box 31785
Tampa, FL 33631

Barclays Bank
Attn: Officer
P.O. Box 8802
Wilmington, DE 19899

Capital One
Attn: Officer
P.O. Box 30285
Salt Lake City, UT 84130

Chase
Attn: Officer
P.O. Box 15298
Wilmington, DE 19850

Discover Financial Services
Attn: Officer
P.O. Box 30395
Salt Lake City, UT 84130

Internal Revenue Service
Attn: Officer
P.O. Box 7317
Philadelphia, PA 19101

Lowes
Attn: Officer
P.O. Box 960010
Orlando, FL 32896

Nationstar Mortgage
Attn: Officer
P.O. Box 650783
Dallas, TX 75265

OneMain Financial
Attn: Officer
900 West Ehringhause Street
Elizabeth City, NC 27909

Sessoms & Rogers, P.A.
Attn: Officer
P.O. Box 110564
Durham, NC 27709

U.S. Bank National Association
Nationstar Mortgage LLC - Officer
P.O. Box 619096
Dallas, TX 75261-9741

Andrew L. Vining, Esq.
Atty for Select Portfolio Servicing, Inc.
10130 Perimeter Parkway, Suite 400
Charlotte, NC 28216

David W. Neill, Esq.
Atty for Bank of America
P.O. Box 23028
Tampa, FL 33623

Whitney Maxwell, Esq.
Atty for U.S. Bank National Association
10130 Perimeter Parkway, Suite 400
Charlotte, NC 28216

Neil Jonas, Esq.
Brock & Scott, PLLC
8757 Red Oak Blvd., Suite 150
Charlotte, NC 28217

Amie C. Sivon, Esq.
Atty for U.S. Bank National Association
P.O. Box 31507
Raleigh, NC 27622

updated 3-3-20